**Heywood & Morrill Rattan Company v. John N. Jacobson, Conservator.**

**Gen. No. 13,447.**

1. PRACTICE—*restoration of lost files.* If the order restoring lost files is sufficient on its face, in order to question its propriety a bill of exceptions should be made up showing the evidence upon which the court acted.

2. APPEALS AND ERRORS—*effect of stipulation authorizing use of original bill of exceptions.* Such a stipulation applies as well to a restored bill of exceptions as to the original one.

3. MASTER AND SERVANT—*who not fellow-servants.* *Held,* that a chief engineer was not a fellow-servant of the plaintiff who was working under the orders of such chief engineer.

4. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* The doctrine of assumed risk does not apply as against a servant who is injured while obeying the direct instructions of his superior in charge of the work, it not appearing that the servant acted recklessly in obeying such instruction.

Action in case for personal injuries. Error to the Circuit Court of Cook county; the Hon. M. F. FOLEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed March 20, 1908.

F. J. CANTY and WHITE, MABIE & CONKEY, for plaintiff in error.

RICHBERG & RICHBERG, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Defendant in error recovered a judgment in the Circuit Court in an action for personal injuries. From this judgment plaintiff in error was allowed an appeal to the Circuit Court, which apparently was not

prosecuted. Meanwhile it would appear that the bill of exceptions was lost or destroyed, since in February, 1907, nearly five years after the judgment was rendered, a petition was filed to restore the bill of exceptions.

Attorneys for defendant in error interposed a motion to affirm the judgment, on the ground that the transcript of the record contains no bill of exceptions. The original transcript of record filed in this court February 6, 1907, was certified by the clerk of the Circuit Court to be a complete transcript "except the bill of exceptions, the original of which has been lost or misplaced" after it had been duly filed in the clerk's office. There is a supplemental transcript of record which purports to contain a copy of the original bill of exceptions, which transcript was filed March 1, 1907. In this supplemental transcript there is an order of the Circuit Court wherein it is made to appear that upon application of plaintiff in error for an order authorizing the original bill of exceptions to be supplied by a certified copy of the original, it appearing that the original had been lost or destroyed without fault or neglect of the applicant, that said original had been duly filed in the office of the clerk of said court on the twenty-sixth of February, 1902, and that the copy of said original attached to the petition of the applicant is a true and correct copy of the said original bill of exceptions, the court certifies the copy attached to the petition of the applicant to be a true and correct copy of said original bill of exceptions; and it is ordered and the court authorizes the loss of the original bill of exceptions to be supplied and it "is hereby supplied by said copy of said original bill of exceptions." It is further ordered that said copy shall have the same effect as the original would have had in all respects.

It is claimed in behalf of plaintiff in error—hereinafter called defendant—that the order restoring a lost part of the record is in accordance with section 1, chap-

ter 116 R. S., which provides for an order of court "authorizing such defect to be supplied by a duly certified copy of such original record where the same can be obtained." It is apparent from inspection of the supplemental transcript of record that no such "duly certified copy" was presented to the court, and that the so called "true and correct copy" was at most a reproduction of the lost original bill of exceptions. We are of opinion, however, that the order of restoration is in substantial compliance with the provisions of section 2 of chapter 116 R. S., which provides "for the restoration of court records lost or destroyed." While plaintiff's counsel contend that the restoration was not in compliance with the statute, the evidence upon which the Circuit Court acted in supplying the substance of the lost record has not been preserved by bill of exceptions, and as said in McCabe v. Porter, 73 Ill. 244-245, if in the opinion of counsel "the evidence was insufficient to warrant the making of an order, he should have preserved it by bill of exceptions and thus brought it before us." While it is true the application to the Circuit Court was apparently intended to be based upon section 1 of the Act referred to, but does not meet its requirements, and while there are manifest irregularities in the petition and in the clerk's certificate, we are of opinion nevertheless that the order of court upon its face sufficiently meets the requirements of section 2 of the Act. We are of opinion also that the stipulation to incorporate the original bill of exceptions in the transcript was still applicable to the bill when restored.

It is urged that the supplemental transcript of record containing the restored bill of exceptions was filed without suggestion of diminution of record and without leave of court to supply. It appears, however, that both the original transcript and the supplemental transcript of record were filed before the beginning of the March term of court to which the writ of error was prosecuted. The two documents together pur-

ported to contain a complete transcript of the record and were filed on or before the second day of the term, as the statute prescribes. No application therefore for leave to file was required.

It is urged in behalf of the defendant that the verdict was against the weight of the evidence. There is evidence tending to show the defendant company was at the time of the accident receiving a new boiler about eleven feet in length and weighing about four thousand pounds. It had been brought to defendant's premises upon a truck which was backed up to a platform upon which the boiler was to be unloaded. The plaintiff was engaged in handling lumber in the yard of the defendant and was ordered by the foreman to go to the help of the chief engineer under whose direction, as there is evidence tending to show, the boiler was to be unloaded. He was told by the engineer that the boiler was to be taken to the engine room and was set to work helping to unload it. The boiler was so far unloaded at the time of the accident that one end was resting on the platform, the other still resting on the truck. The engineer, according to plaintiff's testimony, told plaintiff and a fellow workman who was helping to unload the boiler that they would "have to put another roller down," and added "You fellows raise it high up with the crowbar." Plaintiff testifies that the yard foreman came up and brought plaintiff a block and put it down by plaintiff's crowbar, saying "You got a good chance, you can raise it good." The foreman then went away and the engineer said "Everything is ready, go ahead." Plaintiff bore down on his crowbar, and while so doing the boiler when it moved rolled over against plaintiff, knocking him down. As he fell he reached out with his right hand to the wagon toward which he was falling, and as his hand came upon the wagon the boiler rolled against it, cutting off one finger and injuring others. In the main features of this testimony the plaintiff is corroborated by the workman

who was engaged with him in helping to unload the boiler. There is conflict in the evidence. In behalf of defendant there is testimony to the effect that Robinson, the chief engineer, was not near the boiler at the time of the accident and gave no order to plaintiff. The chief engineer himself states that he sent for some men "and called these two men over to unload the heater," but that "at the precise moment Timm was hurt I did not say anything to him," and that he "was talking to the yard foreman  *  *  * about twenty-five feet away." One witness for the defendant testifies that the yard foreman, the chief engineer, an assistant engineer and three others beside plaintiff "were there in and about moving that boiler." There is therefore evidence tending to show that plaintiff was obeying an order of his superior at the time the boiler rolled over on him and that no sufficient precautions had been taken to guard against an accident such as occurred. Whatever of conflict there is in the evidence was proper matter for consideration by the jury. We are of opinion that no reason is apparent why we should interfere with their conclusion on the questions of fact, and we cannot concur in the contention that the verdict is against the weight of the evidence.

It is contended that the chief engineer was a fellow-servant of the plaintiff. It must suffice to say that in our opinion there is no evidence tending to support this contention. The chief engineer was in charge of the unloading and was apparently recognized as having authority by the yard foreman and others. The yard foreman, plaintiff's immediate superior, sent plaintiff to the chief engineer and, as there is evidence tending to show, placed him under said engineer's orders, the foreman himself as such, taking some part apparently in the work then in hand.

Nor do we concur in the contention that plaintiff assumed the risk of the boiler rolling. He was acting apparently under the direct orders of his superior.

It is true that "a servant assumes the risk of known dangers such as are so obvious that knowledge of their existence may be fairly presumed." Pittsburg Bridge Co. v. Walker, 170 Ill. 550. In this case where plaintiff was obeying direct instructions of the superior in charge of the work, the doctrine of assumed risk is not applicable. The servant had a right to rely upon the superior whose orders he was obeying not to give an order involving sudden danger to the employe without having taken measures to obviate the danger or at least called attention to the danger before execution of the order. The servant "cannot be charged with negligence in obeying an order of the master unless he acts recklessly in so obeying," and whether he so acted is a question of fact for the jury. Gundlach v. Schott, 192 Ill. 509-512, and cases there cited.

Complaint is made of instructions given and refused, but consideration of the objections urged discloses no material error in this respect. We are of opinion the record is free from reversible error and the judgment of the Circuit Court will therefore be affirmed.

*Affirmed.*